

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

55¢

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | John W. Darrah |
|---|---|---|---|
| CASE NUMBER | 02 C 1244 | DATE | 03/19/2003 |
| CASE TITLE | Rental Services Corp. v. International Union of Operating Engineers | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Summary Judgment (doc. #6);
Defendant's Motion for Summary Judgment (doc. #8);
Defendant's Motion for Sanctions (doc. #13)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] . Enter memorandum opinion and order. For the attached reasons, RSC's motion for summary judgment (doc. #6) is DENIED. The Union's motion for summary judgment (doc. #8) is GRANTED. The Union's motion for sanctions (doc. #13) is DENIED.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 20 2003 | |
| | Notified counsel by telephone. | date docketed | 17 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | 15 docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| JHC courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



MAR 2 0 2003

| | |
|---|---|
| RENTAL SERVICES CORPORATION, | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) No. 02 C 1244 |
| | ) Judge William J. Hibbler |
| INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 150, | ) |
| Defendant/Counter-Plaintiff. | ) |

MEMORANDUM OPINION AND ORDER

Rental Service Corporation seeks to vacate an arbitrator's award in favor of the International Union of Operating Engineers, Local 150. The Union filed a counterclaim seeking to enforce the award. The parties have filed cross-motions for summary judgment. For the following reasons, RSC's motion for summary judgment is DENIED, and the Union's motion for summary judgment is GRANTED.

I. Background

The parties do not dispute the factual circumstances giving rise to this litigation. RSC rents and sells construction equipment in Cook and LaSalle Counties, Illinois. In 1999, RSC voluntarily recognized the Union as the exclusive bargaining representative to represent the workers employed by RSC. In December 1999, the parties concluded negotiations and entered into a collective bargaining agreement to be in effect form January 1, 2000 through December 31, 2002. The CBA covered the terms and conditions of employment for all RSC mechanics, and included a specific process for settling disputes between the employer and its employees. The dispute resolution process

1

17

included a two-step grievance procedure to be followed by arbitration if the parties could not resolve their disputes in the grievance procedures. The CBA required that "[g]rievances will be presented in writing within seven (7) business days of the occurrence, if not, the grievance shall be deemed abandoned and waived." It further specified that if the answer to the step-one grievance is unsatisfactory, the Union will send written notice to the Company "within seven (7) business days to proceed to Step 2," but did not define any consequences for an untimely filed Step 2 grievance. Finally, the CBA provided that if a Step 2 grievance was not satisfactorily resolved, the parties "will endeavor" to select a mutually satisfactory arbitrator "within 7 days of the receipt of the Step 2 answer."

Shortly after the CBA became effective, RSC issued a written warning to Richard Schneider, an RSC mechanic, regarding tardiness and attendance problems that occurred prior the agreement's effective date. In accordance with the CBA dispute resolution procedures, the Union filed a grievance ("written-warning grievance") with the Company. RSC denied the Union's grievance in a letter sent by mail and by facsimile on January 18, 2000. In a letter dated January 27, 2000, but postmarked February 1, 2000, the Union requested that the grievance proceed to the second stage of the dispute resolution procedure. RSC denied the Step 2 grievance as untimely, but offered to meet with the Union in an attempt to resolve the dispute, making it clear to the Union that it was not waiving its timeliness objection. The efforts to resolve the dispute failed and on April 26, 2000 (more than two months after RSC's denial of the step-two grievance as untimely), the Union demanded arbitration.

RSC objected to the Union's demand for arbitration, and the parties selected an arbitrator to determine whether the Union's request to proceed to step two of the grievance procedure was

timely (and, if so, to resolve the dispute). Before the arbitrator held a hearing regarding the written-warning grievance, RSC terminated Schneider for excessive tardiness, and the Union subsequently filed a second grievance protesting Schneider's termination ("termination grievance"). The Union contacted RSC's counsel and requested that the two grievances be consolidated in the pending arbitration and that the parties immediately arbitrate the termination grievance without proceeding through the two-step grievance procedure. On September 14, 2000, the Union informed the arbitrator in writing that the parties had agreed to consolidate the two grievances, and as a result the September 19 hearing date was postponed. A few days later, a representative from RSC's human resources department informed the Union that it desired to proceed through the two-step grievance procedure before arbitrating the termination grievance.

During a three-day arbitration hearing, RSC argued that the Union had waived its right to seek arbitration related to the written-warning grievance when it failed to file a timely request to proceed with its initial grievance and when it failed to timely request arbitration. RSC also argued that the written warning grievance was not arbitrable because the conduct at issue occurred prior to the effective date of the CBA. Finally, RSC argued that the termination grievance was not arbitrable because the Union did not proceed through all steps of the grievance procedure prior to arbitration. During the hearing, the arbitrator heard testimony regarding the parties' intention to consolidate the two grievances, the timeliness of the written-warning grievance, and the merits of the two grievances.

The arbitrator first determined that both the written-warning grievance and the termination grievance were procedurally arbitrable. The arbitrator concluded that the express language of the CBA did not require forfeiture of the written-warning grievance because the Union's request to

proceed to Step 2 was transmitted two days after the time allotted by the CBA. The arbitrator held that the CBA instead required him to determine on a case-by-case basis whether the Union's delay in requesting the appeal prejudiced the Company. In so ruling, the arbitrator first considered the language of the entire dispute resolution provision. He found that it outlined specific criteria under which a Step 1 grievance would be deemed to have been waived, but was "conspicuous in its silence concerning the consequences of a late appeal." Thus, the arbitrator concluded that the two-day delay did not prejudice the Company and thus did not operate as a waiver of the Union's right to pursue the grievance.

The arbitrator also found that the Union's delay in requesting arbitration after the denial of the written-warning grievance at Step 2 did not operate to waive its right to seek arbitration. The arbitrator commented that the express language of the agreement imposes a duty on the parties to agree on an arbitrator, but did not set a deadline before which a party must initiate formal arbitration proceedings. The arbitrator also noted that this was not the first squabble between the Union and the Company regarding whether the CBA imposed a deadline for demanding arbitration. The arbitrator noted that a prior arbitration award interpreted the CBA's provision regarding the timeliness of demands for arbitration as ambiguous, and resolved the same issue in favor of the Union. The arbitrator found the prior award to be "a reasonable interpretation and application of the contract," and thus deferred to that award, concluding that the Union's two-month delay did not render its request for arbitration untimely.

In concluding that the termination grievance was procedurally arbitrable, the arbitrator found that the parties "apparently agreed to consolidation . . . before [the] termination grievance was formally filed." The arbitrator noted that a Union representative had written him, advising that "the

4

Company does not object to consolidating the two matters," and that RSC, which had received a copy of the Union's letter, never objected to it. The arbitrator further found that RSC's September 22 request that the parties proceed through the two-step grievance procedure "sought to raise form over substance." The arbitrator concluded that there was no evidence that the Union acceded to RSC's change of heart and that the Company was bound by its prior agreement to consolidate the matters.

Before proceeding to the merits of the dispute, the arbitrator addressed the issue of whether the written-warning dispute was within the scope of the CBA, ruling that the agreement covered the written-warning grievance because the warning was issued after the date in which the CBA became effective. The arbitrator then ruled in favor of RSC on the merits of the written-warning grievance and found that RSC did have just cause to issue the January 5, 2000, warning. With regard to the termination grievance, however, the arbitrator ruled in favor of the Union, finding that the termination was without just cause and entering an award in favor of the Union requiring Schneider's reinstatement with back-pay, minus a two-week suspension.

RSC now contends that the arbitrator's award should be vacated because the arbitrated exceeded the scope of his authority when he determined that the written-warning grievance was procedurally arguable even though the Union's requests to proceed with both the grievance and arbitration were untimely. RSC next argues that the arbitrator exceeded the scope of his authority in ruling that the termination grievance was procedurally arbitrable. Finally, RSC argues that the arbitrator exceeded the scope of his authority by ruling on the written-warning grievance because it concerned behavior that occurred prior to the effective date of the CBA, and thus was outside the scope of that agreement.

II. Analysis

At the outset, RSC's complaint is problematic. RSC seeks to set aside a portion of the arbitrator's award concerning an issue on which it *prevailed*. The arbitrator held that RSC did have just cause to issue the January 5 written warning and denied the grievance. The Court supposes that RSC might be concerned about the persuasive effect of the arbitrator's award concerning the issue of whether the written-warning grievance was procedurally arbitrable. But RSC does not advance this argument, and the Court will not construct arguments for it. *See APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir.1996); *Mendoza v. Chicago Park Dist.*, No. 00 C 2825, 2002 WL 31155078, *6 (N.D.Ill. Sept. 26, 2002); *Jackson v. Casio PhoneMate, Inc.*, 105 F.Supp.2d 858, 874 (N.D. Ill. 2000). In any event, the CBA has expired, so the arbitrator's award interpreting it can have no future persuasive effect. "Under Article III of the Constitution, the exercise of federal judicial power depends on the existence of a justiciable case or controversy; federal courts do not have jurisdiction to review moot cases." *Buckley v. Archer-Daniels-Midland Co.*, 111 F.3d 524, 526 (7th Cir. 1997). A justiciable case must exist throughout the entire pendency of an action, not just at the time a case is filed. *Board of Educ. of Downers Grove Grade Sch. No. 58 v. Steven L.*, 89 F.3d 464, 467 (7th Cir.1996). When the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome, the case is moot. *Stewart v. Taylor*, 104 F.3d 965, 969 (7th Cir.1997). With regard to RSC's complaint to set aside the arbitrator's award related to the written-warning grievance, there is no injury for the Court to redress—RSC prevailed on the merits, and the procedural issue has been rendered moot by the expiration of the contract. Accordingly, this Court is without jurisdiction to review RSC's

claims with regard to the written-warning grievance and shall address only its claim regarding the termination grievance.

Judicial review of arbitration awards under collective bargaining agreements is extremely narrow. *United Steelworkers of America v. Enterprise Wheel & Car, Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *ANR Advance Transp. v. International Brotherhood of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998). When collective bargaining agreements "provide grievance procedures to settle disputes between the union and the employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances," courts may not reconsider the merits of an award, even where the parties allege that the arbitrator erred or misinterpreted the contract. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed. 2d 740 (2001); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). If the Court were to equate error with non-interpretation, no arbitration award could be final, and review of arbitral awards would then "serv[e] the same function as an appeal within a unitary judicial system." *See George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579 (7th Cir.2001). Arbitration awards must be enforced even if they reflect factual, interpretive, or legal blunders, otherwise the parties are deprived of what hey bargained for when they chose arbitration: swift, inexpensive, and final decision. *Id.* Consequently, if the arbitrator's award draws its essence from the contract, courts have no authority to set aside the award. *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC*, 768 F.2d 180, 184-85 (7th Cir. 1985). In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error

7

does not suffice to overturn his decision." *Misco, Inc.*, 484 U.S. at 38; *see also Ethyl Corp.*, 768 F.2d at 184-85.

Procedural issues, such as standing or the timeliness of the filing of a grievance, are matters for the arbitrator to determine. *Beer Sales Drivers, Local 744 v. Metropolitan Distribs., Inc.*, 763 F.2d 300, 303 (7th Cir.1985); *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 860 F.2d 1420, 1424 (7th Cir.1988). Thus, so long as the arbitrator bases his determination that the parties followed the procedures set forth in the contract on an interpretation of the collective bargaining agreement, the award must stand. Only when the arbitrator "dispenses his own brand of industrial justice," basing his award on some body of thought, or feeling, or policy, or law that is outside the contract, may a court set aside the award. *Enterprise Wheel*, 363 U.S. at 597; *Anheuser-Bush, Inc., v. Local Union No., 744*, 280 F.3d 1133, 1142 (7th Cir.2002).

RSC argues that the arbitrator exceeding the scope of his authority in concluding that the termination grievance was arbitrable despite the fact that the parties had not proceeded through the two-step grievance procedure. RSC contends that the CBA allowed the parties to modify the agreement only by "joint written agreement" of the parties and that the arbitrator's reliance on extrinsic evidence to demonstrate that RSC consented to arbitration was improper. But the arbitrator noted that on September 14, 2000, the Union sent him a *written* letter stating that the parties agreed to consolidating the written-warning grievance and the termination grievance. RSC's counsel never objected to that letter. Based on that letter the initial September 19, 2000, arbitration hearing was rescheduled. The arbitrator also observed that on September 22, 2000, RSC appeared to change its mind when an RSC official (not counsel) demanded that the Union follow the grievance procedure with respect to the termination grievance. But the Union did not accede to the

8

demand. The arbitrator concluded that "a reasonable party in the position of the union could conclude that the parties had agreed to consolidate the termination grievance with the written-warning grievance for arbitration and that following the formal steps of the grievance procedure with respect to termination was not a prerequisite for arbitration." Faced with inconsistent positions taken by RSC, the arbitrator found that the September 14, 2000, letter, which caused the parties to reschedule the September 19 hearing, represented a written agreement to consolidate the written-warning and termination grievances without exhausting all steps in the grievance procedure. "[T]he question for decision by a federal court asked to set aside an arbitration award ... is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194-95 (7th Cir.1987). The arbitrator's interpretation of the September 14 letter and the testimony of the RSC official that it did not agree to forego the grievance procedure is an attempt to construe or apply the contract and if an "arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision. " *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000).

On a final note, the Union has moved for sanctions under Fed. R. Civ. P. 11. Rule 11 sanctions are appropriate only where the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). The Union argues that because procedural arbitrability questions are for the arbitrator that RSC's acted in bad faith in filing its complaint. Although it is true that procedural arbitrability

9

is a question for the arbitrator and not the court, it cannot be said that courts have no authority to review arbitrator's decisions on such matters. The arbitrator's decision must still draw its essence from the contract. RSC's complaint raises a colorable claim that the arbitrator's award did not draw its essence from the contract and therefore the Union's request for sanctions is DENIED.

III. Conclusion

For the foregoing reasons RSC's motion for summary judgment (doc. #6) is DENIED. The Union's motion for summary judgment (doc. #8) is GRANTED. The Union's motion for sanctions (doc. #13) is DENIED.

IT IS SO ORDERED.

March 19, 2003
Date

The Honorable John W. Darrah
United States District Court

10